[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned matter calls for a determination of the Court's jurisdiction to modify, inter alia, the visitation provisions of a Florida judgment of dissolution of marriage (entered approximately eight months prior to the filing of the motion to modify) when the custodial parent and minor children CT Page 7097 have since relocated from Florida to Connecticut as expressly anticipated in the judgment.
There is no substantial dispute regarding the underlying facts.[1] The parties, both of whom were represented by counsel at the time, were divorced pursuant to a Final Judgment of Dissolution of Marriage entered by the Circuit Court in and for Escambia County, Florida on September 26, 1995 (the "Decree"). The parties have four minor children who presently range from 7 to 17 years of age. The Decree approved and incorporated the parties' separation agreement which provided, inter alia, that (i) the parties share parental responsibility for the children, (ii) the mother ("Hilery") be designated as the primary residential parent, (iii) Hilery be permitted to relocate to Connecticut with the minor children, and (iv) the father ("James") have visitation with the children.
Subsequent to the entry of the Decree, Hilery relocated to Connecticut with the minor children as anticipated. James claims that he has exercised visitation rights with the two older children in the State of Florida but complains that Hilery has refused to allow the two younger children to visit with him in violation of the terms of the parties separation agreement (as incorporated in the Decree). As a result of this dispute over visitation (and perhaps other issues as well), Hilery, on June 3, 1996, filed with this Court a motion to reopen and modify the Decree. On or about July 3, 1996, James filed with the Florida court a motion for contempt and motion to reopen and modify the Decree. On September 9, 1996, James filed a motion to dismiss Hilery's motion to reopen and modify the Decree for lack of jurisdiction under the Uniform Child Custody Jurisdiction Act (the "UCCJA"), C.G.S. § 46b-90 et seq., and the Parental Kidnapping Prevention Act (the "PKPA"),28 U.S.C.A § 1738A.[2] All motions are presently pending and the parties have stipulated that neither would pursue the motions pending in the Florida court until this Court ruled on the jurisdictional issue raised by James' motion to dismiss.
The proper disposition of this matter primarily involves the interplay between three statutes, to wit: Connecticut General Statutes §§ 46b-56, 93 and 104. See Kioukis v. Kioukis,185 Conn. 249, 440 A.2d 894 (1981). This Court's authority to modify a visitation order is found in C.G.S. § 46b-56 (a), which provides, in relevant part, that "the Court may at any time make or modify any proper order regarding the education and support of CT Page 7098 the children and of care, custody and visitation if it has jurisdiction under the revisions of Chapter 815o."
Chapter 815o (C.G.S. § 46b-90 et seq.) encompasses Connecticut's statutory adaptation of the UCCJA. One of the primary purposes of the UCCJA is the avoidance of "jurisdictional competition and conflicts with courts of other states in matters of child custody . . .". C.G.S. § 46b-91 (a)(1). Toward that end, C.G.S. § 46b-93 contains certain jurisdictional linchpins in child custody matters. The statute sets forth those circumstances under which the Superior Court has jurisdiction to make a child custody determination by initial or modification decree.
In this case, Hilery's motion seeks, inter alia, to modify the visitation provisions of the Decree. This relief would constitute a "modification decree" within the meaning of 46b-92 (7) ("a `modification decree' means a custody decree which modifies or replaces a prior decree, whether made by the court which rendered the prior decree or by another court"). Although C.G.S. § 46-93 addresses the court's jurisdiction to make custody determinations by initial or modification decree, "the rules governing modification jurisdiction are markedly different from the rules applicable to initial jurisdiction." Bodenheimer; Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, 14 Fam. L.Q. 203, 215 (1981).
This distinction arises primarily as a result of the application of C.G.S. § 46b-104 (a):
 "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction."
The effect of this statute is to accord a jurisdictional priority to the state which entered the initial custody decree so long as that state continues to "have jurisdiction under jurisdictional prerequisites substantially in accordance with this CT Page 7099 chapter . . .". That state is Florida.
The "jurisdictional prerequisites" referred to in C.G.S. § 46b-104 (a), as set forth in Florida Statutes Annotated Section 61.1308 et seq., are "substantially in accordance with" Connecticut's adaptation of the UCCJA. Florida would appear to have jurisdiction under F.S.A. § 61.1308(1)(b), that statute being identical to the provisions of C.G.S. §§ 46b-93 (a)(2)(A) and (B). The child and at least one contestant (James) have a significant connection with Florida. James, at all times relevant hereto (including the present), has been a Florida resident. The children were, and had been, Florida residents at the time the Decree entered and they, or some of them, have exercised visitation with James in Florida since the entry of the Decree. Hilary's motion to modify was filed at a time when the children had resided in Connecticut for eight months, at most, following the entry of the Decree. It would appear, given the recency of the children's move to Connecticut, that substantial evidence would be available in Florida regarding the children's care, education, personal relationships and overall needs.
The facts of this case bear a remarkable resemblance to the facts before the court in Lombardo vs. Lombardo,13 Conn. L. Rptr. 537
(1995). In Lombardo, a Connecticut court made a custody determination in January 1994 pursuant to a stipulation of the parties wherein the parties agreed, inter alia, that (i) the minor child would continue to reside primarily with the mother, (ii) the mother and child could relocate to the State of Florida, and (iii) the father would have certain specified visitation rights. When visitation problems arose approximately ten months later, the father filed a motion for contempt in the Connecticut court. The mother responded by filing a motion to dismiss the contempt proceedings, alleging that the Connecticut court lacked subject matter jurisdiction because she and the child had moved to and been living in Florida since the entry of, and as contemplated in, the stipulated order. The court, looking to C.G.S. §§ 46b-93 (a)(2)(A) and (B), observed that "the mere fact that the child is living with the Plaintiff mother in another state under a detailed visitation schedule approved by this court and agreed to by the parties does not alter [the conclusion that the Connecticut court should retain continuing jurisdiction over the matter]". The court denied the Plaintiff mother's motion to dismiss. The facts of Lombardo and the facts of the case at bar are virtually identical and the analysis should produce a consistent result. CT Page 7100
There may come a time when this Court has jurisdiction to act in this matter. The ties between the State of Florida and the parties and children may become too tenuous to support Florida's exercise of jurisdiction under its statutory version of C.G.S. § 46b-93 (a)(2). Likewise, the Florida courts may decline to exercise jurisdiction with respect to the present controversy between the parties. Those are matters, however, over which this Court has no control. At the present time, this Court lacks jurisdiction over this matter and, therefore, the motion to dismiss is granted.[3]
Solomon, J.